[712 NYS2d 575]

In the Matter of BARNEY T. LEVANTINO, an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL DISTRICT, Petitioner.

Second Department, August 7, 2000

### APPEARANCES OF COUNSEL

*Grace D. Moran,* Syosset (*Chris G. McDonough* of counsel), for petitioner.

*Ernest J. Peace*, Mineola, for respondent.

**OPINION OF THE COURT**

Per Curiam.

The Grievance Committee served the respondent with a petition dated May 19, 1998, containing three charges of professional misconduct. After a prehearing conference on February 25, 1999, this matter was repeatedly adjourned due to the respondent's attempts to obtain counsel to represent him, and surgery required by the Special Referee. After a hearing on November 3, 1999, the Special Referee sustained all three charges. The Grievance Committee now moves to confirm the Special Referee's report and to impose such discipline upon the respondent as the Court deems just and proper. The respondent's counsel has submitted an affirmation in mitigation, requesting leniency.

Charge One alleged that the respondent neglected a legal matter entrusted to him, in violation of Code of Professional Responsibility DR 6-101 (a) (22 NYCRR 1200.30 [a]) and DR 1-102 (a) (8) (now [7]) (22 NYCRR 1200.3 [a] [8] [now (7)]).

On or about March 21, 1985, while an associate of the law firm of Cama & Rosen (hereinafter the firm), the respondent interviewed Jerome Citrolo and obtained a retainer agreement on behalf of the firm. The firm was to commence a medical malpractice action on behalf of Mr. Citrolo. The retainer entered into on March 21, 1985 was a contingency fee agreement filed with the Office of Court Administration on May 9, 1985.

The firm thereafter directed the respondent to withdraw from representing Mr. Citrolo. He failed to withdraw and maintained the Citrolo case file under his control. From the date of the retainer through the spring of 1988 the respondent did little or no work on the Citrolo matter.

The respondent left the firm in the spring of 1988. The Statute of Limitations ran on the Citrolo matter without the respondent or any other lawyer commencing an action or otherwise preserving Mr. Citrolo's rights against the defendant.

Charge Two alleged that the respondent engaged in acts of deceit and misrepresentation and has demonstrated a lack of fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (4) and (8) (now [7]) (22 NYCRR 1200.3 [a] [4], [8] [now (7)]).

After the respondent left the firm, he went to work for Eric Holtzman, Esq. The respondent left the Citrolo file in the possession of the firm.

In June 1992 the respondent received phone calls from Mr. Citrolo and his mother inquiring about the progress of the lawsuit. The respondent admitted that he erroneously advised Mr. Citrolo's mother that the suit was viable and that he was handling it. In subsequent conversations with the complainant and his mother, the respondent failed to advise them of the fact that the Statute of Limitations had run and that the right to commence an action had been extinguished. In response to further contacts from the complainant and/or his mother in or about April 1996, the respondent continued to lie about the status of the suit and falsely advised the complainant and his mother that he had obtained a judgment in the sum of approximately $40,000 on behalf of Mr. Citrolo.

Charge Three alleged that the respondent intentionally wrote a check to Jerome Citrolo, from his personal account, which he knew would be dishonored due to insufficient funds, for the purpose of deceiving and misleading Citrolo, in violation of Code of Professional Responsibility DR 1-102 (a) (4) and (8) (now [7]) (22 NYCRR 1200.3 [a] [4], [8] [now (7)]).

As part of his continuing attempt to deceive Mr. Citrolo, the respondent misled the client and his mother by telling them that he had obtained a judgment in excess of $40,000. The respondent admitted that Mr. Citrolo continued to press him for information and/or resolution of the action. In reply, the respondent informed Mr. Citrolo that a judgment in Mr. Citrolo's favor would shortly be entered. The respondent admittedly gave Mr. Citrolo a check for over $40,000 drafted on a personal account, which he knew would be dishonored for insufficient funds.

In view of the respondent's admissions, the Special Referee properly sustained all three charges of professional misconduct. Accordingly, the Grievance Committee's motion to confirm the Special Referee's report is granted.

In determining an appropriate measure of discipline to impose, the respondent implores the Court to consider the motives which induced him to breach the rules of conduct. The respondent has always been a model citizen active in various community activities. The respondent has no prior disciplinary history and has never been the subject of any other complaints. In a depressed emotional state emanating from marital problems and the death of his brother from Acquired Immune

Deficiency Syndrome, the respondent obtained a retainer agreement from Mr. Citrolo in an effort to help someone who he felt had been wronged. Alleging that no efforts were being made by the firm of Cama & Rosen "to act properly" on the Citrolo matter, the respondent "decided to effect a satisfactory resolution" of the matter. The respondent, acting "inappropriately and without reason, impelled only by sympathy," paid Mr. Citrolo the sum of $2,500 out of his own funds and was attempting to refinance his home to pay the balance of the fictitious judgment. In the expectation that he would receive funds from the refinancing of his home, the respondent wrote a check for $42,000, which was returned for insufficient funds. The respondent acknowledges that he has an outstanding obligation to Mr. Citrolo for which he remains responsible. He alleges that he intends to satisfy that obligation.

Portraying the respondent as a "decent man who broke rules but in the long run did nothing to hurt anyone and actually injured himself for the benefit of the complainant," the respondent's counsel requests leniency on behalf of his client.

In view of the respondent's unblemished record, his full cooperation, his expressed remorse, and the absence of venality, he is suspended from the practice of law for one year for his professional misconduct.

BRACKEN, J. P., O'BRIEN, RITTER, SANTUCCI and THOMPSON, JJ., concur.

Ordered that the petitioner's motion to confirm the report of the Special Referee is granted; and it is further,

Ordered that the respondent, Barney T. Levantino, is suspended from the practice of law for a period of one year, commencing September 7, 2000, and continuing until the further order of this Court, with leave to the respondent to apply for reinstatement no sooner than six months prior to the expiration of the said period of one year upon furnishing satisfactory proof (a) that during the said period he refrained from practicing or attempting to practice law, (b) that he has fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (see, 22 NYCRR 691.10), and (c) that he has otherwise properly conducted himself; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Barney T. Levantino, shall desist and refrain from

(1) practicing law in any form, either as principal or agent, clerk or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.